UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

IZZAT NAZER,

      Plaintiff,

v.                                     Case No: 8:16-cv-02259-CEH-JSS

CITY OF ST. PETERSBURG and FIVE
BUCKS DRINKERY, LLC

      Defendants.

_____/

## <u>ORDER</u>

This cause comes before the Court upon Defendant Five Bucks Drinkery, LLC's Motion to Dismiss Plaintiff's Amended Complaint or, in the Alternative, Motion for More Definite Statement and Incorporated Memorandum of Law (Doc. 33), Defendant City of St. Petersburg's Motion to Dismiss Plaintiff's Amended Complaint or, in the Alternative, Motion for More Definite Statement and Incorporated Memorandum of Law (Doc. 36), and Plaintiff Izzat Nazer's ("Nazer") responses thereto (Docs. 38, 39). The City of St. Petersburg (the "City") moves to dismiss Counts 1 and 2, which allege claims against it under 42 U.S.C. § 1983 for failure to protect and police misconduct. Doc. 36. Five Bucks Drinkery, LLC ("Five Bucks") moves to dismiss Counts 3 and 4 against it, which allege that it committed aggravated battery and a hate crime, for failure to state a claim. Doc. 33. Both Defendants alternatively move for a more definite statement. Docs. 33, 36. The Court, having considered the motions, responses thereto, and the Amended Complaint, and being fully advised in the premises, will grant the motions and dismiss the Amended Complaint in its entirety without prejudice.

# I.     STATEMENT OF FACTS[1]

Nazer's claims stem from an alleged verbal altercation between himself and a Five Bucks employee, Bradley Hegarty, and a subsequent physical altercation between Nazer and two unnamed security guards outside of Five Bucks after its closing on October 22, 2015.  Doc. 29 ¶¶ 4, 9, 17-22.  The altercations were witnessed by police officers, and resulted in Nazer being injured and arrested.[2]  *Id.*  Prior to the altercations, Nazer and three women were inside of Five Bucks.  *Id.* ¶ 4.  At closing time, the group was asked to leave, which they did, moving outside to the edge of the sidewalk to await the women's transportation.  *Id.* ¶¶ 5-6.  While Nazer was sitting with the women, Hegarty approached the group and yelled demeaning, vulgar, and degrading comments at Nazer in an apparent attempt to end Nazer's conversation with the women and prevent him from accompanying them home for the evening.  *Id.* ¶¶ 7-10.  While this verbal exchange was occurring, Nazer saw three police officers standing behind Hegarty, who did not intercede in the events.  *Id.* ¶ 12.  The situation escalated when Nazer swore at Hegerty, at which point the officers walked away.  *Id.* ¶¶ 13-14.

Soon after, the women's transportation home arrived and Nazer approached the women to say goodnight.  *Id.* ¶ 16.  At that point, an unidentified security guard verbally confronted Nazer, while another prepared to strike Nazer with his fist.  *Id.* ¶ 17.  Nazer protested the interference, claiming that he wanted only to say goodnight, but the security guards struck him, pinning him to the ground, with one guard holding his head, and the second repeatedly bashing Nazer on the back

---

[1] The statement of facts is derived from Plaintiff's Amended Complaint (Doc. 29), the allegations of which the Court must accept as true in ruling on the instant motion.  *See Linder v. Portocarrero*, 963 F.2d 332, 334 (11th Cir. 1992); *Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp. S.A.*, 711 F.2d 989, 994 (11th Cir. 1983).

[2] Hegarty is not a defendant in this lawsuit.

of his head with a sharp metal object, causing Nazer to bleed. *Id*. ¶¶ 18-20. Less than a minute later, police officers arrived and assisted one of the guards in pinning Nazer to the ground. *Id*. ¶ 21.

Although the timing and order of events are unclear from the Amended Complaint, at some point Nazer was taken to the hospital and at some point he was handcuffed. *Id*. ¶ 22. Nazer was told he was under arrest, but when he asked why, the police simply advised that he would be told later. *Id*. ¶ 22. At some point later, Nazer opened his wallet and saw that the credit cards had been removed and randomly placed in different pockets of his backpack, which indicated to him that the police had searched his backpack. *Id*. ¶ 23.

According to a police report, there were two video recordings of the events, one by a taxi driver, and a second by the Five Bucks security camera system. *Id*. ¶¶ 24-25. However, the officer stated he could not retrieve the Five Bucks recording because neither he nor Five Bucks knew how to operate the system. *Id*. ¶ 25. Additionally, the police officers questioned the security guards and retrieved brief statements from the three women at the scene. *Id*. ¶¶ 26, 27.

Based on these allegations, Nazer filed a four-count Amended Complaint raising two claims against the City and two claims against Five Bucks. Doc. 29. Count I alleges that the City is liable under 42 U.S.C. § 1983 for the officers' failure to protect him during the incident. *Id.* ¶¶ 28-30. Count II alleges police misconduct and is "a tort claim for personal injury arising from negligence or otherwise." *Id.* ¶ 31. The City moved to dismiss these claims under Federal Rule of Civil Procedure 12(b)(6), and alternatively moved for a more definite statement under Federal Rule of Civil Procedure 8. Doc. 36.

Count III alleges aggravated battery against Five Bucks for the actions of the security guards. Doc. 29 ¶¶ 33-34. Count IV alleges that Five Bucks committed a hate crime against

Nazer, who is Middle-Eastern. *Id.* ¶¶ 35-39. Five Bucks moved to dismiss these claims under Federal Rule of Civil Procedure 12(b)(6), and alternatively moved for a more definite statement under Federal Rule of Civil Procedure 8. Doc. 33.

## II.    STANDARD OF REVIEW

To survive a motion to dismiss, a pleading must include a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal,* 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). Labels, conclusions and formulaic recitations of the elements of a cause of action are not sufficient. *Id.* at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Furthermore, mere naked assertions are not sufficient. *Id.* A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). The court, however, is not bound to accept as true a legal conclusion labeled as a "factual allegation" in the complaint. *Ashcroft v. Iqbal,* 556 U.S. at 678. Therefore, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.*

Additionally, to survive a motion to dismiss, the plaintiff must allege the claim in a legible manner with numbered paragraphs, incorporating by reference other parts of the pleading for clarity. Fed. R. Civ. P. 10. Failing to comply with these rules may result in a shotgun pleading. Four types of shotgun pleadings exist. *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1321-22 (11th Cir. 2015). The first is a complaint that contains several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where all but the first count contain irrelevant information and/or legal claims. *Id.*; *see also Thompson v.*

*RelationServe Media, Inc.*, 610 F.3d 628, 650 n. 22 (11th Cir. 2010); *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1279 (11th Cir. 2006). Another type of shotgun pleading is one that is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Weiland*, 792 F.3d at 1322. The third type is when the pleading groups several causes of action together, each with its own legal standard. *See id.*; *see also Ledford v. Peeples*, 605 F.3d 871, 892 (11th Cir. 2010). The final type of shotgun pleading is one where multiple claims are asserted "against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Weiland*, 792 F.3d at 1322. The court may require the plaintiff to submit a more definite statement pursuant to the Federal Rules of Civil Procedure if faced with a shotgun pleading. *Anderson v. Dist. Bd. Of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 367 n.3 (11th Cir. 1996); Fed. R. Civ. P. 12(e).

## III.   DISCUSSION

### A.    Claims Against The City

42 U.S.C. § 1983 establishes a federal cause of action for damages against those who, acting under color of state law, deprive or cause the deprivation of the federal rights of any citizen or other person under their jurisdiction. The purpose of this section "is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161, 112 S. Ct. 1827, 118 L. Ed.2d 504 (1992) (citing *Carey v. Piphus*, 435 U.S. 247, 254–57, 98 S. Ct. 1042, 55 L. Ed.2d 252 (1978)). Section 1983 does not create new substantive rights, but is merely a vehicle for vindicating federal rights elsewhere conferred. *Baker v. McCollan*, 443 U.S. 137, 144 n.3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). Additionally, courts are cautioned that "the Fourteenth

Amendment must not be used through section 1983 as a 'font of tort law' to convert state tort claims into federal causes of action." *Waddell v. Hendry Cty. Sheriff's Office*, 329 F.3d 1300, 1305 (11th Cir. 2003) (quoting *Neal ex rel. Neal v. Fulton Cty. Bd. of Educ.*, 229 F.3d 1069, 1074 (11th Cir. 2000)).

A municipality may not be held liable under § 1983 for the acts of its subordinates under the doctrine of *respondeat superior* or under a theory of vicarious liability. *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691, 98 S. Ct. 2018, 2036, 56 L. Ed. 611 (1978); *see also City of Canton, Ohio v. Harris*, 489 U.S. 378, 385, 109 S. Ct. 1197, 1203, 103 L. Ed. 2d 412 (1989) (stating that "*[r]espondeat superior* or vicarious liability will not attach [to a municipality] under § 1983"). Instead, a municipality may be held liable under § 1983 only when an action pursuant to an official municipal policy of some nature causes a constitutional tort. *Monell*, 436 U.S. at 690. A plaintiff can establish the requisite "official policy" in one of two ways: (1) identifying an officially promulgated policy, or (2) identifying an unofficial custom or practice shown through the repeated acts of the final policymaker of the municipality. *Grech v. Clayton Cty., Ga.*, 335 F.3d 1326, 1329 (11th Cir. 2003). Under either method, the plaintiff must show that the municipality has authority and responsibility over the government function at issue and identify the officials who have final policy making authority within that municipality over the act alleged to have cause the constitutional violation. *Id.* at 1330.

### 1.     Failure To Protect (Count I)

In order to sustain a failure to protect claim under the Fourteenth Amendment, the plaintiff must show that the government had an affirmative duty of protection. *Hilderbrand v. Sanders*, 495 F. App'x 6, 7 (11th Cir. 2012). "In general, the government does not violate the Due Process Clause of the Fourteenth Amendment by failing to protect an individual against private violence."

*Id.* at 7 (citing *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 195, 109 S. Ct. 998, 103 L. Ed. 2d 249 (1989)). However, in limited circumstances, an affirmative duty of protection is imposed on the government where it has taken affirmative acts in restraining an individual's freedom through incarceration, institutionalization, or other similar limitation of personal liberty. *DeShaney*, 489 U.S. at 190; *see also Santamorena v. Ga. Military Coll.*, 147 F. 3d 1337, 1340 (11th Cir. 1998). In the absence of circumstances showing government custody, the government may be held liable for failure to protect if it is engaged in behavior that is "arbitrary or conscience shocking in a constitutional sense." *Waddell v. Hendry Cty. Sheriff's Office*, 329 F.3d 1300, 1305 (11th Cir. 2003). The measurement of "conscience-shocking is no calibrated yard stick." *Id.* (quoting *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 118 S. Ct. 1708, 1716, 140 L. Ed. 2d 1043 (1998)). Something more than negligence is required, and even intentional wrongs might not be sufficient to state a claim under § 1983. *Id.* However, "[a]cts 'intended to injure in some way unjustifiable by any government interest' are 'most likely to rise to the conscience-shocking level.'" *Id.* (quoting *Lewis*, 523 U.S. at 833).

Nazer's Amended Complaint fails to state a claim for failure to protect. Importantly, Nazer was not in the City's custody during either the verbal altercation, or the physical altercation. Nazer alleges that he only observed police officers nearby during the verbal altercation with Hegarty, and not that they participated or restrained his liberty in any way. Doc. 29 ¶ 12. Subsequently, he alleges that the police arrived after the physical altercation, and in his response to the City's motion to dismiss, Nazer admits that he was not in custody during the relevant time period. Doc. 29 ¶ 21; Doc. 38 ¶ 4. Nor do the allegations, which do not demonstrate that the police acted with any intent to injure Nazer, amount to conscious-shocking conduct. Thus, the events alleged in the Amended

Complaint did not give rise to a governmental duty to protect, and, therefore, Count I fails to state a claim.

### 2. Police Misconduct (Count II)

The Amended Complaint is devoid of any official or unofficial policy, custom, or practice that deprived Nazer of any constitutional right, as is required to state a claim for municipal liability under § 1983. *Geidel v. City of Bradenton Beach*, 56 F. Supp. 2d 1359, 1364 (M.D. Fla. 1999) (dismissing a § 1983 claim against a municipality because the plaintiffs did not sufficiently allege that individual officers' conduct conformed to an official policy, custom, or practice of the municipality). Instead, Nazer simply alleges that the police officers involved in this matter, who are not defendants in this action, engaged in misconduct by: (1) wrongfully detaining him on the basis of his race or ethnicity, (2) conducting an unauthorized search of his backpack, and (3) conducting the investigation in a "corrupt and purposely negligent" manner. Doc. 29 ¶ 32. Even a liberal reading of the Amended Complaint leads to the conclusion that Nazer seeks to hold the City liable for the actions of its employees under either the doctrine of *respondeat superior* or a theory of vicarious liability, which is not permitted. *City of Canton*, 489 U.S. at 385. Accordingly, Count II fails to state a claim against the City.

### B. Claims Against Five Bucks

### 1. Aggravated Battery (Count 3)[3]

Chapter 772 of the Florida Statutes is the Civil Remedies for Criminal Practices Act, otherwise known as the Florida RICO Act. § 772.101, Fla. Stat. (2016). The Florida RICO Act is informed by the federal RICO statute, and courts often look to the federal statute in interpreting it. *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1263-64 (11th Cir. 2004). To state a Florida

---

[3] Although labeled aggravated battery, Nazer brings this count under the civil remedies for criminal practices statute. The Court assumes, although it is not clear, that the criminal practice involves aggravated battery.

RICO claim, the plaintiff must show the existence of a RICO enterprise, as well as a pattern of racketeering activity. *Id.* at 1264. A RICO enterprise is a group of persons or associates that exists with the purpose of conducting illegal activity. *Id.* "To successfully allege a pattern of racketeering activity, plaintiffs must charge that: (1) the defendants committed two or more predicate acts within a ten-year time span; (2) the predicate acts were related to one another; and (3) the predicate acts demonstrated criminal conduct of a continuing nature." *Id.* Sporadic or isolated criminal acts are not sufficient. *Id.*

The facts alleged in the Amended Complaint plainly do not state the existence of a RICO enterprise, or a pattern of racketeering activity. There are no allegations that Five Bucks exists for the purpose of conducting illegal activity, or that more than an isolated event occurred. Instead, the Amended Complaint alleges, essentially, that on a single date, a verbal and then a physical altercation occurred that led to Nazer being injured. Accordingly, to the extent that Nazer seeks to state a claim under the Florida RICO Act, the facts pleaded in the Amended Complaint fail to support such a claim.

However, Florida law does recognize the common law tort of battery. *Quilling v. Price*, 894 So. 2d 1061, 1063 (Fla. 5th DCA 2005). "Battery consists of the infliction of a harmful or offensive contact upon another with the intent to cause such contact or the apprehension that such contact is imminent." *Id.* (citing *Paul v. Holbrook*, 696 So. 2d 1311 (Fla. 5th DCA 1997); *see also U.S. E.E.O.C. v. Four Amigos Travel, Inc.*, No. 8:11-cv-1163-T-26MAP, 2013 WL 436427, at *2 (M.D. Fla. Feb. 5, 2013). The elements of a claim for battery are "(1) the intent to cause a harmful or offensive contact with another person, and (2) an offensive contact that directly or indirectly results." *Long v. Baker*, 37 F. Supp. 3d 1243, 1252 (M.D. Fla. 2014) (quoting *Rubio v. Lopez*, 445 F. App'x 170, 175 (11th Cir. 2011)). Additionally, under Florida law, an employer may be held

liable for the intentional torts of "an employee if the employee committed the tort while acting within the course and scope of his employment, with the purpose of benefiting the interests of the employer." *Ruiz v. Aerorep Grp. Corp.*, 941 So. 2d 505, 507 (Fla. 3d DCA 2006) (citing *Gowan v. Bay Cty.*, 744 So. 2d 1136, 1138 (Fla. 1st DCA 1999)); *see also Lozada v. Hobby Lobby Stores, Inc.*, No. 16-15959, 2017 WL 3225636, at *4 (11th Cir. July 31, 2017) (stating that although an employer generally is not liable for its employee's torts, the employer becomes liable if the tort is committed within the employee's real or apparent scope of employment).

Nazer fails to state a claim for battery against Five Bucks. When read liberally, the Amended Complaint alleges that the two security guards who pinned Nazer to the ground and injured his head were security personnel employed by Five Bucks, and acted during their work hours. Doc. 29 ¶¶ 18-20, 34. Although Nazer alleges that they also acted on Five Bucks' property, this is contradicted by other allegations in the Amended Complaint that he had left Five Bucks and was at the curb outside. *Id.* ¶¶ 5, 7. Regardless, Nazer fails to allege what the scope of the guards' employment was, whether they were acting within it, or whether they were acting out of a motivation to serve Five Bucks. Accordingly, Nazer has failed to state a basis on which Five Bucks could be held liable for any torts committed by the security guards.

### 2. Hate Crime (Count 4)

18 U.S.C. § 249 is a federal criminal statute pertaining to hate crime acts. To determine whether a private right of action exists based on a federal statue, courts look first for "rights-creating" language that explicitly confers a right on a class of persons that includes the plaintiff, or for whose special benefit the statute was enacted. *Love v. Delta Air Lines*, 310 F.3d 1347, 1352 (11th Cir. 2002). However, " 'statutory language customarily found in criminal statutes . . . and other laws enacted for the protection of the general public,' . . . provides 'far less reason to infer a

private remedy in favor of individual persons.' " *Love*, 310 F.3d at 1352-53 (quoting *Cannon v. Univ. of Chi.*, 441 U.S. 677, 690-93 (1979)). The United States Supreme Court has noted that it "has rarely implied a private right of action under a criminal statute, and where it has done so 'there was at least a statutory basis for inferring that a civil cause of action of some sort lay in favor of someone.' " *Chrysler Corp. v. Brown*, 441 U.S. 281, 316 (1979) (quoting *Cort v. Ash*, 422 U.S. 66 (1975)).

18 U.S.C. § 249 does not contain "rights creating" language that provides for a private right of action. Nor does the language of the statute suggest that this is one of those rare circumstances where a private right of action could be inferred from a criminal statute. The statute does not create personal rights or private remedies, but instead delineates how the offenses are penalized, and under what circumstances the United States may prosecute such offenses. 18 U.S.C. § 249. Likewise, other courts to have addressed this issue have concluded that "[t]he Hate Crimes Act 'does not confer rights on a specific class of persons, but rather criminalizes certain offences . . . [and] specifically provides for criminal enforcement, and authorizes penalties including imprisonment.' " *Chi. Title & Land Tr. Co. v. Rabin*, No. 11-cv-425, 2012 WL 266387, at *4 (N.D. Ill. Jan. 30, 2012) (quoting *Wolfe v. Beard*, 2011 WL 601632, at *3 (E.D. Pa. Feb. 15, 2011)). Indeed, numerous courts have reached the same conclusion. *See, e.g.*, *Smith v. Montgomery Police Dep't*, No. 2:16-cv-156-WKW, 2016 WL 7424489, at *1 (M.D. Ala. Dec. 23, 2016); *D'Aquin v. Landrieu*, No. 16-3862, 2016 WL 7178511, at *3 (E.D. La. Dec. 9, 2016); *Bilinski v. Wills Eye Hosp.*, No. 16-02728, 2016 WL 6247569 (E.D. Pa. Oct. 26, 2016); *Brown v. Winman*, No. 5:15-cv-59-BO, 2015 WL 5837471, at *1 (E.D.N.C. Oct. 6, 2015); *Bey v. City of Oakland*, No. 14-cv-01626-JSC, 2014 WL 4220319, at *3 (N.D. Cal. Aug. 25, 2014). Accordingly, Nazer cannot state

a claim against Five Bucks based on 18 U.S.C. § 249. This count of the Amended Complaint will be dismissed with prejudice.

### C. Shotgun Pleading

Regardless of whether the Amended Complaint stated a claim under any of the counts raised, the pleading constitutes a shotgun pleading that would require a more definite statement. The only count to incorporate any factual allegations is Count IV, pertaining to 28 U.S.C. § 249. The remaining counts fail to incorporate any factual allegations, or identify which of the factual allegations pertain to that count. Additionally, Counts I and II improperly jumble together numerous theories. In Count I, Nazer states that the police deprived him of equal protection, failed to protect him, and facilitated the commission of a hate crime. Doc. 29 ¶¶ 28-30. Likewise, in Count II, Nazer claims he was wrongfully detained and that his Fourth Amendment rights were violated. Thus, the Amended Complaint is a shotgun pleading that does not comply with Federal Rules of Civil Procedure 8 and 10, and which fails to give the City or Five Bucks "adequate notice of the claims against [it] and the grounds upon which each claim reses." *Weiland*, 792 F.3d at 1322.

## IV. Leave to Amend

In light of his *pro se* status, the Court will afford Plaintiff one final opportunity to amend his complaint, should he desire to do so. A court should "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2).[4]

---

[4] The Tampa Chapter of the Federal Bar Association operates a Legal Information Program on Tuesdays from 11:00 a.m. to 12:30 p.m. at the Sam Gibbons United States Courthouse and Federal Building, 801 North Florida Avenue, Tampa, Florida 33602. Through that program *pro se* litigants may consult with a lawyer on a limited basis for free. Reservations for specific appointments may be made by calling (813) 301-5400; walk-ins are welcome if space is available. More information about the program is available on the Court's website at http://www.flmd.uscourts.gov/pro_se/docs/pro-seLegal_Assist.htm under the right-side link "Proceeding Without A Lawyer."

## V. CONCLUSION

Plaintiff's Amended Complaint does not state a claim upon which relief can be granted. Accordingly, it is hereby **ORDERED**:

1. Defendant Five Buck Drinkery, LLC's Motion to Dismiss Plaintiff's Amended Complaint or, in the Alternative, Motion for More Definite Statement and Incorporated Memorandum of law (Doc. 33) is **GRANTED.**

2. Defendant City of Petersburg's Motion to Dismiss Plaintiff's Amended Complaint or, in the Alternative, Motion for More Definite Statement and Incorporated Memorandum of Law (Doc. 36) is **GRANTED**.

3. For the reasons discussed in this Order, Count 4 of the Amended Complaint is dismissed with prejudice.

4. Plaintiff is granted leave to file a second amended complaint within **FOURTEEN (14) DAYS** from the date of this Order, which cures the deficiencies addressed herein. Failure to file a second amended complaint within the time permitted will result in dismissal of this case.

**DONE AND ORDERED** in Tampa, Florida on September 5, 2017.

Charlene Edwards Honeywell
United States District Judge

Copies to:

Counsel of Record and Unrepresented Parties, if any